UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>　　　　　　　　　　Defendant. | CASE NO. 3:22-cv-05180-RJB<br><br>ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

　　　　This matter comes before the Court on the Plaintiff Julie A. Su's[1] Motion for Summary Judgment. Dkt. 12. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

　　　　In this case, the Acting Secretary of Labor for the United States Department of Labor ("Secretary") contends that the United States Postal Service ("USPS") violated the Occupational Safety and Health Act of 1970, U.S.C. §660(c) (referred to as "Section 11(c)"), in connection

---

[1] Julie A. Su became Acting Secretary of Labor on March 13, 2023 replacing Martin J. Walsh. Pursuant to Fed. R. Civ. P. 25(d), the caption should be changed in this and all future pleadings filed in this case.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

with the firing of Kimberly Heath, a probationary mail carrier who was injured on the job. Dkt. 1. The Secretary seeks lost wages, reinstatement, and record expungement for Ms. Heath. *Id.* at 3. She also seeks an order directing USPS to train certain of its employees in the whistleblower protections of OSHA and an order requiring USPS at the Tacoma, Washington facility to post a notice that USPS will not discriminate against an employee because of engagement in activities protected by Section 11(c). *Id.* Lastly, she claims "other and further relief as may be necessary . . . including costs and attorneys' fees." *Id.*

The Secretary now moves for summary judgment on liability arguing that USPS violated Section 11(c). Dkt. 12. She now maintains that USPS's repeated violations of Section 11(c) merit a permanent nationwide injunction requiring USPS to comply with OSHA. *Id.*

For the reasons provided below, the motion (Dkt. 12) should be granted as to liability and as to the sought after injunctive relief in the Tacoma, Washington facilities.

## I.   RELEVANT FACTS

Kimberly Heath was hired to work eight hours a day as a City Carrier Assistant starting February 23, 2019, subject to a 90-day probationary period. Dkt. 8 at 2; 14. USPS probationary employees undergo 30-60-90 day performance evaluations (using a form PS 1750) as part of the process. Dkt. 12-1, at 7-8. An employee cannot pass the probationary period without completing the PS 1750 evaluation process. *Id.* at 47. Hiring and firing decisions are made by the primary supervisors. *Id.* at 12. According to Ms. Heath's primary supervisor, Supervisor Maria Pule, these evaluations are "imperative for the hiring process" for new employees and are "not optional." *Id.* at 10.

In order to make the decision on whether to retain or fire a probationary employee, Supervisor Pule bases her "decision on the [form] 1750," her "gauge" of what an employee can

do by the end of the probationary period, and she would sometimes seek other supervisor's opinions. Dkt. 12-1 at 12.

Supervisor Pule testified that Ms. Heath was performing "really well" in her first 30 days. Dkt. 12-1 at 20; 23. Supervisor Pule states that Ms. Heath was "great . . had a good attitude . . . was a nice person . . . [who] showed up for work on time." *Id.* at 31. She "showed improvement in like her first few weeks." *Id.* at 20. Ms. Heath was given a 30-day performance evaluation. Dkt. 13-3 at 3. According to Ms. Heath, Supervisor Pule and she met for less than five minutes to discuss it. *Id.* at 4.

After her 30-day evaluation, on March 21, 2019, Ms. Heath injured her knee while working. Dkt. 12-1 at 36. Ms. Heath reported that injury on April 13, 2019 and her supervisors gave her several forms to fill out. Dkts. 12-1 at 38, 147-151; 12-3 at 14; 12-4 at 26, 30-31. That same day, April 13, 2019, Ms. Heath visited the doctor, and submitted her workers' compensation paperwork and medical restriction paperwork to her supervisors. Dkts. 12-5 at 9-13, 18; 12-1 at 147-151. Even though she knew that it would delay getting Ms. Heath her benefits, Supervisor Pule testified that she and other supervisors were late submitting Ms. Heath's workers' compensation paperwork to Injury Compensation (a separate unit within USPS that handles on the job injury claims). Dkt. 12-1 at 65-67; 72-74. (Some of the paperwork from Supervisor Pule was due within 24 hours of the injury and still had not sent it by May 6, 2019). *Id.* at 67. Ms. Heath's union began filing grievances on her behalf. Dkt. 13-3 at 14. Ms. Heath was given modified work conditions on May 7, 2019. Dkt. 12-1 at 43.

Supervisor Pule testified that as to employees in a modified position like Ms. Heath she felt that ". . . it doesn't make sense for the employee to be . . . reviewed during that time." Dkt. 12-1 at 15. Accordingly, after doing a 30 day evaluation on Ms. Heath, Supervisor Pule did not

1  do any more evaluations of Ms. Heath because she was injured. *Id.* at 34-35. Supervisor Pule
2  testified that she drafted a 60 day evaluation of Ms. Heath (dated April 10, 2019) but after she
3  became aware of Ms. Heath's injury on April 13, she did not conduct the evaluation or discuss it
4  with Ms. Heath. *Id.* at 37-38. Supervisor Pule thought that there was no need to discuss the
5  evaluation with her because she then was not "actually doing carrier duties in its full capacity."
6  *Id.* at 38. Supervisor Pule was not given training on how to evaluate employees with job
7  modifications. Dkt. 12-2 at 24-25. USPS policy required supervisors to evaluate injured
8  employees, including probationary employees, based on their medical restrictions. Dkt. 12-2 at
9  17-19.
10       When the first set of modified work conditions were not helping to resolve her pain, Ms.
11  Heath was given additional modifications. Dkt. 12-1 at 16. Ms. Heath's second work
12  modification was that of being able to work out of a sedan. *Id.* According to Supervisor Pule,
13  after Ms. Heath informed her that she was not able to work out of the sedan either, Supervisor
14  Pule felt like she probably would not be able to do the job. *Id.* According to Supervisor Pule the
15  second set of modifications resulted in Ms. Heath reporting new pain in her back. *Id.* at 33.
16  Supervisor Pule did not let Ms. Heath know that she might not pass her probationary period. *Id.*
17  at 34.
18       While she consulted other supervisors to see if they had any input, Supervisor Pule made
19  the final decision to fire Ms. Heath in a letter dated May 18, 2019. Dkt. 12-1 at 12, 36, and 54.
20  Supervisor Pule testified that it is "very common" for probationary employees to have a lot of
21  "unacceptable" marks at their 30-day evaluation so that they can see improvement. *Id.* at 26.
22  She states that it is not fair to think an employee will not pass their probationary period based on
23  the first 30-day review. *Id.* at 27. However, Supervisor Pule testified that she based her decision
24

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

to fire Ms. Heath on the 30 day evaluation "because [she] thought [she] was doing what [she] was supposed to do." *Id.* at 39. Ms. Heath's separation date ended up being May 31, 2019. *Id.* at 36 and 54.

Supervisor Pule did not request an extension of Ms. Heath's probationary period. Dkt. 12-1 at 25. Supervisor Pule was aware that there were no policies against extensions to the probationary evaluation period. *Id.* at 10. Although at one point Supervisor Pule testified that she could not recall ever asking for an extension of time, she later testified that she had asked for and received an extension of time for another probationary employee. *Id.* at 10; 17-18. That employee started her probationary period in another office and performed different duties; Supervisor Pule felt that she need more time to access whether she could do the job. *Id.* at 17-18.

Supervisor Pule testified that if Ms. Heath had been given time to heal, her performance probably would have improved and she could have passed her probationary period. Dkt. 12-1 at 86. She states that she regrets how she treated Ms. Heath and would have handled Ms. Heath's injury and situation differently if she could go back and do it again. *Id.* at 88.

## II.  DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, which is a preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 254; *T.W. Elect.,* 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888–89 (1990).

**B. OSHA SECTION 11(c) CLAIM**

Referred to as Section 11(c) of OSHA, 29 U.S.C. § 660(c)(1) provides:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

After a complaint is filed and an investigation conducted, the statute authorizes the Secretary of Labor (the Plaintiff here) to bring a lawsuit in U.S. district court. 29 U.S.C. § 660(c)(2).

Courts have adopted the three stage burden-shifting framework for Section 11(c) claims that is used in other employment discrimination statutes such as Title VII of the Civil Rights Act of 1964. *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th Cir. 1993); *Perez v. U.S. Postal Serv.*, 76 F. Supp. 3d 1168, 1183 (W.D. Wash. 2015). To prevail on a claim for violation of Section 11(c), the Secretary must prove the following *prima facie* case by a preponderance of the evidence: "(1) the claimant employee participated in protected activity, (2) the employer subsequently subjected the employee to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action." *Perez* at 1183. Once the Secretary has proven the *prima facie* case, the burden shifts to the employer to "articulate a legitimate nondiscriminatory [or nonretaliatory] reason for its actions." *Schweiss* at 459. If the employer successfully meets that burden, the Secretary "must prove that the proffered explanation is pretextual." *Id.*

### 1. *Prima Facie* Case

The Secretary has proven a *prima facie* case, by a preponderance of the evidence, that USPS violated Ms. Heath's Section 11(c) rights. Ms. Heath engaged in protected activity when she reported her work place injury and when she applied for worker's compensation for that injury. The prohibition against discrimination under Section 11(c) includes "discriminating against an employee for reporting a work-related . . . injury," 29 C.F.R. § 1904.36, and "[c]ertain other rights [that] exist by necessary implication," 29 C.F.R. § 1977.12(a). Accordingly, reporting her workplace injury is expressly covered by the statute. Applying for worker's compensation for an on-the-job injury is a right which exists by "necessary implication." *See* Whistleblower Investigations Manual available at https://www.osha.gov/sites/default/files/enforcement/directives/CPL_02-03- 011.pdf at 34.

Although USPS argues that applying for worker's compensation is not a right that exists by "necessary implication" it fails to offer any support for its argument. Ms. Heath engaged in protected activity when she reported her injury and applied for worker's compensation.[2]

The Secretary has shown that USPS subjected Ms. Heath to adverse employment actions. In the Ninth Circuit, "an adverse employment action is adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000). USPS delayed processing Ms. Heath's worker's compensation claims until after her union began filing grievances about it. USPS was aware that failing to process her worker's compensation claim was impacting Ms. Heath's ability to get paid. It then terminated Ms. Heath's employment. Both these actions are sufficient adverse employment actions to deter an ordinary employee from exercising their rights under OSHA.

The Secretary has also shown that there was a causal connection between Plaintiff's reporting of her injury and applying for worker's compensation and USPS's failure to timely process her claim and ultimately firing her. A causal link between a protected activity and an adverse employment action can "be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). The Plaintiff notified USPS of her injury and applied for worker's compensation on April 13, 2019. USPS failed to timely process her worker's compensation claim and then it fired her (by letter dated May 18, 2019) with an effective date of May 31, 2019. USPS's failure to process her worker's compensation claim was immediate. Its termination of her employment occurred, at most, 49

---

[2] The Secretary also argues that Ms. Heath engaged in protected activity under Section 11(c) when she requested workplace modifications based on her injury. While this argument has merit, the Court need not reach this issue because Ms. Heath's injury report and application for workplace benefits were sufficient protected activities for purposes of the motion.

days after she notified it of her on-the-job injury. "[W]here an adverse employment action follows on the heels of protected activity," timing alone suffices to show causation. *Villiarimo v. Aloha Island Air*, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)(finding a *prima facie* case of causation where plaintiffs were discharged 42 to 52 days after the alleged protected activity). USPS argues that causation is not shown here because Ms. Heath's employment was terminated near the end of her probationary period so the timing is not suspect. The Secretary properly points out that even though Supervisor Pule knew of offered extensions of time to other City Carrier Assistant probationary employees (who had not reported injuries) when there was not enough information to properly assess someone's performance, no extension of Ms. Heath's probationary period was sought. Causation is shown.

### 2. USPS's Justification for its Action

The burden shifts to USPS to articulate a nondiscriminatory reason for its failure to timely process Ms. Heath's worker's compensation claim and its ultimate decision to terminate her employment. *Schweiss* at 459. "Where, as here, the employer defends by offering evidence that it had legitimate, nondiscriminatory reasons for taking adverse actions, it bears the burden to prove that its employment decisions would have been the same in the absence of the employee's protected activities." *Perez* at 1191. USPS fails to offer any explanation for its failure to timely process Ms. Heath's worker's compensation claim. (As stated above, it unconvincingly argues that applying for worker's compensation is not a protected activity under Section 11(c).) USPS does argue that Ms. Heath was fired because her performance was unsatisfactory. It fails to show however, that it would have fired her absent her reporting of her injury, receiving work accommodations, or her filing an application for worker's compensation benefits.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

Supervisor Pule testified that if she had evaluated Ms. Heath based on her modified duties, marking certain portions of the evaluation as "not observed" to accommodate for her injury, that Ms. Heath "possibly could have" passed her probationary period. Dkt. 12-1 at 86-87. Supervisor Pule further testified that:

> A. During the deposition process, you have made me aware of a lot of things I probably didn't know of at the time when Ms. Heath was here. Things could have been done differently on my end as a supervisor. I am not being fully informed of how to handle a situation like Ms. Heath's. And you brought up reasonable accommodations, the idea of, you know, requesting or extending her evaluation period due to her injuries. There are things like that that I think could have done differently. And feel like I failed her in some ways because I didn't offer some of those things, not on purpose, but just not knowing that those tools or those resources were available for me to offer her.
>
> Q. And you weren't aware because the Postal Service didn't train you, right?
>
> A. Yes.
>
> Q. And your supervisor never made you aware of these alternatives?
>
> A. Yes.
>
> Q. Knowing what you know now, if you could go back, would you have treated Ms. Heath differently after she reported her injury?
>
> A. Yes.

Dkt. 12-1 at 87-88. USPS failed to carry its burden.

### 3. The Secretary's Showing that USPS's Proffered Reason is Pretext

Even if USPS had carried its burden that it had a legitimate reason for its actions, the Secretary has demonstrated that USPS's proffered justification to terminate her was pretextual. *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018). The Secretary may show pretext "directly by persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* Both have been shown here.

Supervisor Pule, the person with hiring and firing power, acknowledged that an employee cannot pass the probationary period without completing the PS 1750 evaluation process. Although Supervisor Pule drafted a 60 day review of Ms. Heath (dated April 10, 2019), as soon as Supervisor Pule was informed of Ms. Heath's injury (on April 13, 2019), she did not do the 60 day evaluation or any more evaluations of Ms. Heath. Supervisor Pule thought that there was no need to discuss the 60 day evaluation with Ms. Heath because she then was not going to be "actually doing carrier duties in its full capacity." This is direct evidence of bias. The report was drafted before Ms. Heath's injury while she was engaged in full mail carrier duties. Moreover, Supervisor Pule testified that she based her decision to fire Ms. Heath on the 30 day evaluation "because [she] thought [she] was doing what [she] was supposed to do" even though she freely acknowledged that probationary employees often do not have high marks at their 30-day evaluation so that the reviewers can show that the employee has improved over time. Supervisor Pule admitted that it was not fair to think an employee will not pass their probationary period based on the first 30-day review. Supervisor Pule did not request an extension of Ms. Heath's probationary period. Additionally, Supervisor Pule testified that, if Ms. Heath had been given time to heal, her performance probably would have improved and she could have passed her probationary period. She states that she regrets how she treated Ms. Heath and would have handled Ms. Heath's injury and situation differently if she could go back and do it again. The Secretary has shown that the USPS's proffered reason for Ms. Heath's firing, that of poor performance, was pretext for discrimination.

    4.   <u>Conclusion on Motion for Summary Judgment on Section 11(c) Liability</u>

USPS has failed to point to material issues of fact. The Secretary has shown that USPS violated Ms. Heath's rights under Section 11(c) and that it is entitled to a judgment as a matter of law on this claim.

**C. RELIEF**

OSHA's Section 11(c) provides that in cases brought by the Secretary, the "United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." 29 U.S.C. § 660(c)(2).

1. Ms. Heath

The Complaint seeks the following relief for Ms. Heath: (1) payment for "lost wages and benefits including interest thereon, compensatory damages, plus pre- and post-judgment interest accruing thereon;" (2) reinstatement of Ms. Heath's full-time employment, benefits and privileges; and (3) an Order directing USPS to expunge any adverse references from Ms. Heath's personnel record. Dkt. 1, at 3. In her motion, the Secretary seeks a permanent injunction ordering USPS to expunge Ms. "Heath's personnel record of any negative reference to her protected activity and termination, and only provide neutral references for her." Dkt. 12.

The motion does not address the first two forms of relief for Ms. Heath. Accordingly, this order does not address that requested relief and they remain for trial, further motion practice, or settlement. USPS fails to address the Secretary's motion for an order that it expunge any adverse references from Ms. Heath's personnel record. Considering the Secretary's showing, this is "appropriate relief" under the statute and the relief should be granted. *See Perez* at 1195 (holding that expungement of personnel record is "appropriate relief" under Section 11(c)).

2. Other Relief

The Secretary moves for an additional permanent injunction requiring USPS to:

(1) Not violate OSHA 11(c) by failing to give probationary employees who report work-related injuries equal opportunity to pass probation; this includes but is not limited to evaluating them based on their medical restrictions, providing feedback and their performance evaluations, and/or extending their probationary periods as warranted;

(2) Train all USPS supervisors in properly handling work-related injury complaints from probationary employees and how to handle performance evaluations of such employees who report work-related injuries within a timely manner; [and]

(3) Post a notice informing probationary employees of their rights to report work-related injuries and related medical restrictions free of retaliation, including unfair evaluations and termination.

Dkts. 12 and 14.  The Secretary's original motion sought a nationwide injunction.  Dkt. 12.  In her reply, she agreed to limit the geographical scope of the requested relief to USPS's Western Pacific Area, which includes USPS "districts" USPS calls: "Alaska, Arizona, Bay-Valley, Central Plains, Colorado-Wyoming, Dakotas, Honolulu, Los Angeles, Nevada-Sierra, Portland, Sacramento, Salt Lake City, San Diego, San Francisco, Santa Ana, Seattle and Sierra Coastal."  Dkt. 14.  The Seattle district appears to include Tacoma, Washington.  *Id.*

USPS opposes a grant of nationwide relief, arguing that the relief granted should be limited to Ms. Heath and not bootstrap allegations from other places into this case.  Dkt. 13 at 20-22.

The *Perez* case is instructive on whether an injunction that offers relief beyond that sought for Ms. Heath is appropriate here.  The *Perez* court found that the USPS violated Section 11(c) as to an individual employee who worked at a USPS office in the Seattle area regarding various safety complaints.  *Perez* at 1193.  In addition to seeking relief for the employee, the Secretary in *Perez* moved for an injunction regarding safety complaints at post offices nationwide.  *Id.*  Addressing the USPS's argument that the Secretary should be limited to the

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

pleadings and relief should be only for the single employee, the *Perez* court found that it was appropriate to analogize to Title VII in crafting an injunctive remedy under Section 11(c). *Perez* at 1195. It noted that in the Title VII context, the EEOC, in prosecuting a Title VII violation, "is not merely a proxy for the victims of discrimination, but acts also to vindicate the public interest in preventing employment discrimination." *Id.* at 1195-1196 (*citing EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1542 (9th Cir.1987)). It further noted that "[s]o too, Section 11(c) is designed primarily to serve a public purpose, a purpose which Congress has given the Secretary of Labor the sole authority to vindicate." *Id.* at 1196. There is no private cause of action under OSHA's Section 11(c). *Id.* The *Perez* court further noted that:

> Because the government acts foremost to promote public policy in prosecuting discrimination or retaliation against an aggrieved employee, the Ninth Circuit has recognized that the government may seek broad injunctive relief designed to protect employees as a class. Thus, even when the government pleads individual actions of discrimination, Title VII authorizes the EEOC to seek class action-type relief without complying with Fed. R. Civ. P. 23, and where it has not pled a pattern or policy of discrimination.

*Id.* It concluded then, that there were no reasons to depart from this logic in the Section 11(c) context and so rejected USPS argument that the proposed injunction was "at variance with the pleadings." *Id.* The *Perez* court granted broad injunctive relief that applied beyond the individual employee. This reasoning is persuasive; broad injunctive relief, beyond that applicable to the individual employee maybe reasonable.

While an injunction for broad relief is reasonable, the Secretary must still show that the injunctive relief is narrowly tailored to the "specific threatened harms," *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1141 (9th Cir. 2009), and is needed, *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953). "Generally, a person subjected to employment discrimination is entitled to an injunction against future discrimination unless the employer proves it is unlikely to

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

repeat the practice." *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987). "A district court cannot issue an injunction unless there exists some cognizable danger of recurrent violation." *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854 (9th Cir. 1995). Factors that a district court may consider in making a finding that there is a danger of recurrent violation include:

> the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the extent to which the defendant's professional and personal characteristics might enable or tempt him to commit future violations; and the sincerity of any assurances against future violations.

*Id*. at 854–55.

The Secretary's motion for the above injunctive relief should be granted, in part. The degree of scienter involved here is significant. USPS employees blatantly violated Section 11(c) as to Ms. Heath, demonstrating an open disregard for the requirements of the statute. Further, the Secretary maintains that this is not an isolated incident even in this judicial district. The Secretary has filed three other cases in this district against USPS that she describes as follows:

> *Walsh v. USPS*, No. 3:23-cv-05007 RJB, Dkt. No. 1, (W.D. Wa. filed Jan. 14, 2023) (complaint) (probationary USPS employee working at East Vancouver, Washington facility terminated the day after reporting workplace injury);
>
> *Walsh v. USPS*, No. 3:22-cv-6002 JNW, Dkt. No. 1, (W.D. Wa. filed Dec. 22, 2022)(complaint) (probationary USPS employee working at Tacoma, Washington facility terminated twelve days after reporting workplace injury); and
>
> *Walsh v. USPS*, No. 2:22-cv-1176 RAJ, Dkt. No. 1, (W.D. Wa. filed Aug. 23, 2022) (complaint) (probationary USPS employee working at Seattle, Washington facility terminated fourteen days after reporting workplace injury).

These cases are in the pleading stage and so the allegations are unproven. It is not yet clear that a pattern in the region exists. Still, the allegations are concerning. Further, based on the testimony of Supervisor Pule and the other supervisors, it is clear that training on this issue in

Tacoma, Washington, at least, has not occurred. USPS's vigorous defense of this action demonstrates that it does not recognize the wrongfulness of its employees' conduct. Further, the USPS has failed to point to any evidence that it will not violate Section 11(c) regarding probationary employees' workplace injuries in the future, at least in the Tacoma office. The Secretary has shown that the injunctive relief should be narrowly tailored to the "specific threatened harms," that is, discrimination in Tacoma against probationary employees for reporting work place injuries contrary to Section 11(c).

Although the Secretary moves for an injunction covering USPS's Western Pacific Area, issuance of the injunctive relief for facilities in Tacoma, Washington, only, is appropriate. To the extent that the Secretary moves for injunctive relief in a broader geographical area, she has not yet shown that such relief is needed. The undersigned recognizes that the Secretary may be seeking similar broad injunctive relief in the three remaining cases in this judicial district. *See Walsh v. USPS*, No. 3:23-cv-05007 RJB, Dkt. 1; *Walsh v. USPS*, No. 3:22-cv-6002 JNW, Dkt. No. 1; and *Walsh v. USPS*, No. 2:22-cv-1176 RAJ. As cases develop, a pattern of discrimination may become apparent; it is not yet clear. Accordingly, to the extent that she moves for such relief for the Western Pacific Area or this judicial district, her motion should be denied without prejudice to raising the question in other cases. This issue remains for trial.

The Secretary's proposed order regarding the permanent injunction (Dkt. 12-9) has merit and should be entered with geographic modifications. This relief should be granted for the Tacoma, Washington area only.

### III.  ORDER

Therefore, it is hereby **ORDERED** that:

The Secretary's Motion for Summary Judgment (Dkt. 14) **IS:**

- **GRANTED** as to the motion for summary judgment on Section 11(c) liability;
- **GRANTED** as to the motion for injunctive relief for Kimberly Heath; with respect to Kimberly Heath, USPS **SHALL**:
    1. Within sixty (60) days of the date of this Order, expunge her personnel record of any negative reference to her protected activity and termination,
    2. Only provide neutral references for her by providing the dates of her employment, job title of position held, and relevant salary information; and
    3. Retain a copy of this order, which will be placed in Ms. Heath's personnel file, including eOPF, for purposes of enforcing these terms.
- **GRANTED, IN PART,** as to the remining motion for permanent injunction; that motion **IS GRANTED AS TO THE TACOMA, WASHINGTON FACILITIES ONLY**:
- USPS, its officers, agents, servants, employees and those persons in active concert or participation with them **ARE RESTAINED** from violating the provisions of § 11(c)(1) OSHA by discriminating in any manner against any employee because said employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to OSHA or has testified or is about to testify in any such proceeding or because of said employee's exercise of any right afforded by the OSHA on behalf of himself/herself, including reporting work-related injuries while on probation. To ensure compliance with this provision, USPS **SHALL**:

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

  A. Give probationary employees who report work-related injuries equal opportunity to pass probation; this includes but is not limited to evaluating them based on their medical restrictions, providing feedback and their performance evaluations, and/or extending their probationary periods as warranted;

  B. Within ninety (90) days of the date of entry of this Order, provide training to all its officers, supervisors, and employees regarding the anti-retaliation provisions of § 11(c) of the OSHA, including how to properly handle work-related injury complaints from probationary employees and how to handle performance evaluations of such employees who report work-related injuries. Within thirty (30) days of completion of this training, USPS shall provide documentation showing that the training has been completed by email to the following OSHA representative: Megan Eldridge, Regional Supervisory Investigator, at Eldridge.Megan@dol.gov;

  C. Within ten (10) days of the date of this Order, provide notice informing probationary employees of their rights to report work-related injuries and related medical restrictions free of retaliation, including unfair evaluations and termination by sending them the Notice attached as Appendix A; and

  D. Within ten (10) days of the date of this Order, post the Notice attached as Appendix A to this Order in an area readily accessible to all employees.

Remaining issues will be resolved in the trial now set for 26 June 2023, or by settlement.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18

Dated this 1st day of May, 2023.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge